CLIFFORD JOHNSON *v.* MIDWEST-KENWORTH
SALES AND SERVICE, BRANCH OF
PACIFIC CAR AND FOUNDRY

5-6121                                    492 S.W. 2d 250

Opinion delivered December 18, 1972

*Lloyd C. Burrow Jr.,* for appellant.

*Powell Woods,* for appellee.

J. FRED JONES, Justice. This is an appeal by Clifford Johnson from a judgment of the Benton County Circuit Court in favor of Midwest-Kenworth Sales and Service, Branch of Pacific Car and Foundry, hereafter called Midwest, in a suit by Midwest for a repair bill on a truck belonging to Johnson and in which Johnson counterclaimed alleging damages because of breach of warranty and breach of contract in the repair of the truck.

The facts appear as follows: Johnson owned a K123 International truck tractor and in March of 1970 he

left it with Midwest for repairs. Midwest did work on the truck tractor engine and charged therefor the sum of $1,364.19, none of which was paid at the time the truck was delivered back to Johnson. Midwest filed suit against Johnson on an itemized verified account for the repairs and Johnson answered by general denial and by way of counterclaim. In his counterclaim Johnson alleged that the work was performed by Midwest in a careless, negligent and faulty manner, and that by reason thereof Johnson was forced to spend additional sums in the amount of $2,841.18 for material and labor to replace the faulty repairs performed by Midwest on the vehicle and he prayed judgment against Midwest for $2,841.18. In response to a motion and order to make more definite and certain Johnson alleged in his counterclaim that Midwest carelessly and negligently replaced the left head, pistons, seals and gaskets in the engine of the vehicle and that it negligently failed to replace the right head in the engine of the vehicle when same should have been replaced. After several preliminary motions and amendments, requests for admissions and interrogatories, and memorandum briefs in support of same were filed in this case, the issues were finally heard by the court on May 16, 1971. The trial court entered judgment for Midwest for the repair bill and against Johnson on his counterclaim and on appeal to this court Johnson states the point he relies on for reversal as follows:

> "Appellant established a prima facie case and the court erred by directing a verdict in favor of the appellee."

The brief of the appellant is rather confusing on the "directed verdict" feature of this case because according to the record when the case reached its call on the trial court docket, the record reflects as follows:

> "BE IT REMEMBERED, that on the 16th day of May, 1971, the same being a regular day of the regular March 1971 term of this court, the above-entitled cause having been reached on its regular call and the plaintiffs appearing in person and by their

attorney, Mr. Powell Woods, attorney at law of Siloam Springs, Arkansas, and the defendant appearing in person and by his attorney, Mr. Lloyd C. Burrows, attorney at law of Bentonville, Arkansas, and all announced ready for trial.

"WHEREUPON, by agreement of the parties, a jury was waived and it was agreed that the Court should sit as a jury to try the issues of fact herein, and the plaintiffs and defendant introduced and following testimony to sustain the issues of fact in their respective behalves."

The record then reflects a discussion between the attorneys and the trial judge as to who had the burden of going forward with the proof and it was determined that Midwest had made a prima facie case by filing its verified account with its complaint and that the burden of going forward with the proof rested with Mr. Johnson.

We shall not summarize the testimony except to say that Mr. Johnson testified that he delivered his truck to Midwest to be "fixed" and that when he received it back from Midwest it was not "fixed." He said that he returned the truck to Midwest again but that they did not return it to him in good condition. He said that he eventually had to put a different engine in the truck at a cost of $2,841.18, then Mr. Johnson testified as follows:

"Q. Mr. Johnson, what symptoms did this vehicle show when it was returned from Midwest-Kenworth; what was actually the trouble with this vehicle?

A. Well, I wasn't driving the truck myself. I had another boy driving it, all I know is what he tells me. The truck had no power, it blowed water out of the right head on the breather pipe.

Q. But anyway it was, it was returned in a defective condition.

A. Yes, —"

On cross-examination Mr. Johnson testified that one of his drivers took the truck to Midwest for repairs and signed all of the repair tickets. He said that Midwest replaced the lefthand cylinder head in the truck engine and he presumes that the righthand one was sent to Kansas City to be ground and refaced. Mr. Johnson then offered evidence to the effect that a truck such as the one involved in this case should be expected to operate many more miles than his truck had been operated before repairs. He testified that following the repairs the truck completely broke down after it had been driven 5,463 miles.

Mr. Meek testified that he replaced the engine in Mr. Johnson's truck and that when he did so he found the right piston stuck and the engine head cracked. He testified that he has no idea what caused the piston to stick or the engine head to crack. He testified that freezing or overheating might cause an engine head to crack but that he has no idea what caused the stuck piston and cracked engine head in this case.

At the close of the evidence offered by Mr. Johnson his attorney argued to the trial court that Johnson had shown by the evidence that the truck had been delivered to Midwest in a damaged condition and returned in a damaged condition, and that the evidence was sufficient to overcome the presumption attending the verified account filed with the complaint, and that the burden of going forward with proof shifted back to Midwest. Mr. Johnson then rested his case and Midwest rested and also moved for a "directed verdict." After considerable argument concerning the evidence and lack of it, as to what was wrong with the truck, the court entered a judgment as follows:

"On this 16th day of May, 1972, this cause comes on to be heard. Plaintiff appearing by its attorney, Powell Woods, and Defendant appearing in person and by his attorney, Lloyd C. Burrow, Jr. Whereupon, both parties announced ready for trial, this cause is heard upon the Complaint, Answer, Counterclaim, First

Amended Counterclaim, Second Amended Counterclaim, Requests for Admissions, Interrogatories, Answer to Interrogatories, Amended Answer to Interrogatories, Reply to the Counterclaim and First Amended Counterclaim, Reply to Second Amended Counterclaim, and upon the evidence adduced by the parties, from all of which the Court being well and sufficiently advised, finds: that the Plaintiff is entitled to recover judgment against the Defendant in the amount for which the Defendant was sued which is $1,364.19; that the Counterclaim, First Amended Counterclaim, and the Second Amended Counterclaim of the Defendant should be dismissed and that the Defendant take nothing under his Counterclaim, First Amended Counterclaim or Second Amended Counterclaim.

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that the Plaintiff have judgment against the Defendant in the sum of $1,364.19; that the Plaintiff recover of and from the Defendant all of its cost herein laid out and expended; that this Judgment bears interest from this date at the rate of 6% per annum until satisfied in full."

We have examined the entire record in this case and conclude that the trial court sat as a jury in hearing the evidence in this case and that the judgment of the trial court is supported by substantial evidence. Mr. Johnson did not deny that Midwest made the repairs on the truck as requested by Johnson and as stated on the account rendered by Midwest. Mr. Johnson only *attempted to prove* that the difficulty he was having with the truck was not eliminated by the repairs made by Midwest and that the repairs made by Midwest did no good. The evidence is vague and indefinite as to the nature of the trouble Mr. Johnson was experiencing with the truck both before and after the repairs made by Midwest. Mr. Johnson did offer proof that the truck was driven about 5,463 miles after it was repaired by Midwest; that the motor "locked up" and he had to have a complete new or rebuilt motor installed in the truck.

There is evidence that the "locked up" motor was caused by a stuck piston and that the engine *head* was cracked *between the valves* but there is no evidence at all that the cracked head or stuck piston resulted from, or was connected with, the repairs made, or the work done, on the motor by Midwest.

The judgment is affirmed.